IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,805

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA QUESTED,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court has jurisdiction to correct an illegal sentence even if a defendant bargained for the sentence as part of a plea agreement.

2.

A sentencing judge in one Kansas county has the authority to order a sentence to be served consecutive to a sentence previously imposed by a sentencing judge in another Kansas county.

Review of the judgment of the Court of Appeals in an unpublished opinion dated July 20, 2012. Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed June 26, 2015. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Christina M. Trocheck*, assistant county attorney, argued the cause, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Joshua Quested appeals, contending the sentencing judge imposed an illegal sentence by ordering the sentences in this Saline County case be served consecutive to a previously imposed Dickinson County sentence. He argues no Kansas statute explicitly authorizes consecutive sentences for convictions arising in separate cases prosecuted in different counties. Although the State does not dispute this assertion, it urges us to follow the 20-year-old holding in *State v. Chronister*, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), which recognized the power of a sentencing judge to order that a sentence be served consecutive to a sentence previously imposed in a different county. We agree with this precedent, and we hold that Quested's sentences conformed to Kansas law and are not illegal. We, therefore, affirm his sentences.

## FACTS AND PROCEDURAL BACKGROUND

Pursuant to a plea agreement, Quested pleaded guilty in the Saline County District Court to nonresidential burglary and possession of stolen property in case number 07 CR 249. He also pleaded guilty to possession of marijuana and possession of stolen property in case number 07 CR 47. Under the terms of the plea agreement, Quested agreed that his sentences in Saline County would run consecutive to a yet-to-be-imposed sentence for another recent conviction in Dickinson County case number 07 CR 15. The Dickinson County crimes were factually related to the crimes in one of the Saline County cases.

After being convicted in the three cases, Quested first received his sentence in the Dickinson County District Court. The next day, Quested proceeded to sentencing for his Saline County convictions. The State, consistent with the plea agreement, requested that Quested's Saline County sentences run consecutive to the Dickinson County sentence imposed the previous day. The Saline County sentencing judge adopted this

2

recommendation when imposing sentence. The judge suspended execution of the sentence, however, and granted Quested a dispositional departure to probation.

Nearly 1 year later, the judge revoked Quested's probation after Quested attempted to escape from Labette Correctional Conservation Camp. The judge ordered Quested to serve his underlying prison sentence. Quested then filed a motion to correct an illegal sentence, claiming that the sentencing judge had no statutory authority to make his Saline County sentences run consecutive to his Dickinson County sentence. After a hearing, the Saline County sentencing judge denied Quested's motion. Quested timely appealed to the Court of Appeals, which affirmed. We granted Quested's petition for review. See *State v. Quested*, No. 106,805, 2012 WL 3000385, at *1-2 (Kan. App. 2012) (unpublished opinion), *rev. granted* October 17, 2013.

ANALYSIS

Issue: *Did the sentencing judge have the authority to order Quested's Saline County sentences be served consecutive to Quested's previously imposed Dickinson County sentence?*

1.1. *Preservation*

Initially, the State contends that we lack jurisdiction to review Quested's Saline County sentences because the judge imposed sentences Quested bargained for in his plea agreement. Under K.S.A. 2014 Supp. 21-6820(c)(2), an "appellate court shall not review . . . any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

While K.S.A. 2014 Supp. 21-6820(c)(2) would appear to support the State's position, another statute—K.S.A. 22-3504(1)—provides that a "court may correct an

3

illegal sentence at any time." This court has reconciled the two statutes by holding that an appellate court has jurisdiction to correct an illegal sentence even if it was agreed to in a plea. See *State v. Cullen*, 275 Kan. 56, 60-61, 60 P.3d 933 (2003); *cf. State v. Morningstar*, 299 Kan. 1236, Syl. ¶ 1, 329 P.3d 1093 (2014) (appellate courts have jurisdiction to determine the authority to impose a consecutive sentence even when a defendant receives a presumptive sentence, which is generally not appealable). Quested invoked K.S.A. 22-3504(1) and its authorization to raise a legality challenge at any time by filing a motion to correct an illegal sentence and arguing his Saline County sentences do not conform to Kansas law. See *State v. Sims*, 294 Kan. 821, 825, 280 P.3d 780 (2012) (defining an "illegal sentence" to include one that fails to conform to law).

Hence, Quested's plea agreement does not waive his right to attack his sentence on the basis it was not authorized by statute.

1.2. *Kansas' sentencing statutes and consecutive sentences*

Quested's motion for illegal sentence and his appellate arguments focus on the lack of statutory authority empowering the Saline County sentencing judge to impose sentences consecutive to the Dickinson County sentence. He argues there is no statute addressing consecutive sentences under the circumstances of his case; *i.e.*, when a sentence is imposed on different dates, in courts of different Kansas counties, for separate crimes arising from different charging documents. He notes that Kansas statutes address the issue of consecutive sentences in some circumstances, just not his. The State does not argue that any statute authorizes the sentencing judge's order. Instead, it relies on *Chronister*, 21 Kan. App. 2d 589, which served as the basis for the Court of Appeals' decision. *Quested*, 2012 WL 3000385, at *1-2.

4

As Quested suggests, K.S.A. 2006 Supp. 21-4720—a provision of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, which became effective in 1993—discusses consecutive sentencing but does not cover the circumstances of his case. K.S.A. 2006 Supp. 21-4720 states:

> "(a) The provisions of subsections (a), (b), (c), (d), (e) and (h) of K.S.A. 21-4608 and amendments thereto regarding multiple sentences shall apply to the sentencing of offenders for crimes committed on or after July 1, 1993, pursuant to the sentencing guidelines system as provided in this act. The mandatory consecutive requirements contained in subsections (c), (d) and (e) shall not apply if such application would result in a manifest injustice.

> "(b) *The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases*. The sentencing judge shall state on the record if the sentence is to be served concurrently or consecutively." (Emphasis added.) K.S.A. 2006 Supp. 21-4720(b).

At first glance, the plain language of K.S.A. 2006 Supp. 21-4720(b) appears to be a broad grant of discretion to impose consecutive sentences. But in lieu of a statutory definition for the phrase "multiple conviction cases," this court—in a context different from that presented today—has held the term in K.S.A. 2006 Supp. 21-4720(b) is solely a reference "to sentencing on multiple convictions from one charging document." *State v. Koehn*, 266 Kan. 10, 17, 966 P.2d 63 (1998); *State v. Roderick*, 259 Kan. 107, 113-14, 911 P.2d 159 (1996). Moreover, that "definition applies for all provisions of K.S.A. 21-4720(b)." *State v. Bolin*, 266 Kan. 18, Syl. ¶ 2, 968 P.2d 1104 (1998). Because Quested's multiple convictions did not arise from a single charging document, the judicial construction of the term "multiple conviction cases" means that K.S.A. 2006 Supp. 21-4720(b) did not provide the Saline County sentencing judge with the authority to order

Quested to serve his Saline County sentences consecutive to his Dickinson County sentence.

The other subpart of this statute—K.S.A. 2006 Supp. 21-4720(a)—refers back to several subsections of K.S.A. 21-4608, which was part of the 1969 codification of the criminal law. L. 1969, ch. 180, sec. 21-4608. Under K.S.A. 21-4608(a), a sentencing judge has discretion to impose consecutive sentences when sentencing a defendant on the same day for different crimes. This provision applied to Quested's two Saline County convictions but not to his Dickinson County sentence. Subsection (b) grants discretion for a consecutive sentence when a defendant commits a crime while on various forms of release for a prior misdemeanor conviction. Additionally, subsections (c), (d), and (e) mandate a consecutive sentence when a defendant commits a crime while either incarcerated or on some form of release for a prior felony conviction. See also K.S.A. 2006 Supp. 21-4603d(f). But Quested did not commit a subsequent crime while incarcerated or on release; he committed additional crimes prior to being arrested for the first crimes. Thus, he is correct that subsections (b), (c), (d), and (e) do not apply to his case.

In addition, the State and Quested both accept that K.S.A. 21-4608(h) does not apply to his situation. This provision states:

> "When a defendant is sentenced *in a state court* and is also under sentence from a federal court *or other state court* or is subject to sentence in a federal court *or other state court* for an offense committed prior to the defendant's sentence in a Kansas state court, the court may direct . . . that such state sentences as are imposed may run concurrently with any federal or other state sentence imposed." (Emphasis added.) K.S.A. 21-4608(h).

The Court of Appeals panel deciding *Chronister* interpreted this provision to apply only if the prior sentence had been imposed in the court of another state or a federal

6

court. *Chronister*, 21 Kan. App. 2d at 593. Under this interpretation of K.S.A. 21-4608(h), no statutory provision would expressly apply in Quested's situation. The panel in this case did not analyze the statutes; instead it merely cited *Chronister*. *Quested*, 2012 WL 3000385, at *1-2.

We are not totally convinced the *Chronister* panel's reading of K.S.A. 21-4608(h) is correct. The first few words of K.S.A. 21-4608(h)—"[w]hen a defendant is sentenced in a state court"—apparently refers to the court imposing the new sentence, which obviously would be a court in Kansas. This suggests the subsequent references to a "state court" that imposed a prior sentence also include state courts in Kansas—whether in a different county or even the county of the current conviction. Quested's situation is arguably contemplated by the statute: He was sentenced in Saline County (in a state court) while also under sentence or subject to sentence in Dickinson County (other state court) for an offense committed prior to his sentence in Saline County (a Kansas state court). At a minimum, the statute does not expressly require that the "other state court" sentence be issued by the court of another state.

Nevertheless, the statute does not specifically authorize the imposition of a consecutive sentence. Instead, it states that "such state sentences as are imposed may run concurrently with any federal or other state sentence." K.S.A. 21-4608(h). Although there is no reference to a consecutive sentence, the provision implies that the standard order would be to run the sentences consecutively. The statute arguably clarifies that need not always be the case; the provision allows the court to use discretion in determining whether to impose consecutive or concurrent sentences. See *Chronister*, 21 Kan. App. 2d at 593.

We hesitate to resolve the ambiguities of this provision, for there are many, in an appeal where its meaning has not been argued by the parties, especially since we agree

7

with the remainder of the *Chronister* opinion. Moreover, even if we were to sort through the ambiguities of K.S.A. 21-4608(h), we would walk the same path as did the *Chronister* court in trying to determine the legislature's intent. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014) (court's first task in construing the statutory language is to ascertain legislative intent through an analysis of the language employed, giving ordinary words their ordinary meaning).

We, therefore, will analyze Quested's case based on his premise—which is true even if K.S.A. 21-4608(h) applies—that no Kansas statute *expressly* authorizes a sentencing judge from ordering a sentence to run consecutive to a sentence previously imposed in a different county. But we point out that it is equally true that no Kansas statute *expressly* prohibits a sentencing judge from ordering a sentence to run consecutive to a sentence previously imposed in a different county. Quite simply, no statute expressly addresses this situation.

This legislative silence creates an ambiguity. When faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute's passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. See *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014); *Phillips*, 299 Kan. at 495. The *Chronister* panel employed some of these considerations in reaching its holding.

1.3. Chronister

In *Chronister*, as here, a defendant received sentences on different dates for crimes occurring in different counties. The second sentencing judge ordered Chronister to serve that sentence after he completed the earlier sentence. *Chronister*, 21 Kan. App. 2d at 590-

8

91. On appeal, Chronister argued the sentencing judge lacked authority to order the sentences be served consecutively, noting that no statute explicitly authorized consecutive sentences under circumstances like his.

The *Chronister* Court of Appeals panel concluded that no statute covered the situation and discounted the applicability of K.S.A. 21-4608(h) by limiting it to apply when a defendant is under sentence or subject to sentence in "other jurisdictions." 21 Kan. App. 2d at 593. Nevertheless, the *Chronister* panel held the sentencing judge had discretion to order Chronister to serve his sentence consecutively to the sentence previously imposed in a different county. The panel did so by noting that the statutes allowed for consecutive sentencing if the earlier sentence had been imposed in either "another state" or in federal court and properly determining that it would be "illogical" to conclude the legislature intended a sentencing benefit to defendants who committed more than one offense in Kansas. 21 Kan. App. 2d at 593.

In addition, the *Chronister* court noted that "[p]rior to 1982, the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court" even though no statutory provisions mandated consecutive sentences. 21 Kan. App. 2d at 593 (citing *State v. Reed*, 237 Kan. 685, 703 P.2d 756 [1985]). Then, in 1982, the legislature limited judicial discretion by mandating consecutive sentences in certain cases "in response to public concern." 21 Kan. App. 2d at 593. "Given the impetus behind the 1982 amendment, it is doubtful that the legislature also intended to strip courts of the power to impose consecutive sentences in cases such as the present one" where crimes were committed in two different Kansas counties. 21 Kan. App. 2d at 593-94.

Although this court has not previously addressed the issue in *Chronister* since the KSGA became effective in 1993, the State urges us to recognize that the *Chronister*

9

holding has guided sentencing in Kansas for 20 years, including in this case, and to adopt its reasoning. While the *Chronister* panel read K.S.A. 21-4608(h) differently than we do, the panel's reasoning supports our interpretation of the legislature's intent. In addition, we agree that the doctrine of stare decisis justifies our adoption of *Chronister*.

### 1.4. *Following precedent*

Indeed, following precedent—especially such long-standing precedent—promotes system-wide stability and continuity. *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004). We recognize that we are not bound by the Court of Appeals' decision, but it has guided sentencing judges for 20 years. And no other decision has clearly instructed sentencing judges to do anything but follow *Chronister*—the only appellate decision specifically addressing the circumstances of this case. See *Crist*, 277 Kan. at 715 ("'It is recognized under the doctrine of stare decisis that, once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.'").

Nevertheless, Quested argues we should not adopt *Chronister* because it was wrongly decided. Certainly, even if we were bound by a Court of Appeals decision, which we are not, "[t]he doctrine of stare decisis [would] not compel us to perpetuate an incorrect analysis of a statute enacted by the legislature." *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 787, 189 P.3d 508 (2008). But, as Quested himself takes pains to point out, this is not a situation where the *Chronister* court ignored or modified the plain language in a statute. Rather, the *Chronister* court seemingly held that in lieu of a direct statement by the legislature abrogating a judge's common-law authority to impose a consecutive sentence, the judge retained the authority to decide whether a sentence should be concurrent or consecutive, especially since recognizing that authority furthered the legislative policy. *Chronister*, 21 Kan. App. 2d at 593-94. Although the discussion of this

10

point in *Chronister* is implicit and brief, other cases provide context and support for the proposition that a judge's common-law authority to impose consecutive sentences is not abrogated unless the legislature enacts a statute that does so or otherwise expresses a contrary intent.

1.5. *United States Supreme Court decisions*

Decisions of the United States Supreme Court illustrate the point. The Court documented the history of a judge's common-law power to impose consecutive sentences in *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). The *Ice* Court cited two general authorities supporting the longstanding recognition of a judge's power to exercise discretion and to order a sentence to run either concurrent with or consecutive to another sentence. 555 U.S. at 168-69 (quoting 1 J. Bishop, Criminal Law § 636, pp. 649–650 [2d ed. 1858] ["'(W)hen there are two or more convictions, on which sentence remains to be pronounced; the judgment may direct, that each succeeding period of imprisonment shall commence on the termination of the period next preceding.'"]; A. Campbell, Law of Sentencing § 9:22, p. 425 [3d ed. 2004] ["'Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges.'"]).

The *Ice* Court also cited several English cases to show that a judge's authority to impose a consecutive sentence had been recognized before the "founding of our Nation" and to establish that the "historical record further indicates that a judge's imposition of consecutive, rather than concurrent, sentences was the prevailing practice." 555 U.S. at 169 (quoting *Lee v. Walker*, [1985] 1 Q.B. 1191, 1201 [1984] ["'(T)he High Court has always had inherent jurisdiction to impose consecutive sentences of imprisonment in any appropriate case where the court had power to imprison.'"]; *Queen v. Cutbush*, 2 L.R.Q.B. 379, 382, 10 Cox Crim. Cas. 489, 492 [1867] ["'(R)ight and justice require

11

(that) when a man has been guilty of separate offences, . . . that he should not escape from the punishment due to the additional offence, merely because he is already sentenced to be imprisoned for another offence"; also noting that it had been the practice to impose consecutive sentences "'so far as living judicial memory goes back'"]; and citing *King v. Wilkes*, 19 How. St. Tr. 1075, 1132-1136 [K.B. 1769]).

The *Ice* Court did note, however, that a legislature is free to "rein in the discretion judges possessed at common law to impose consecutive sentences at will." 555 U.S. at 171. The effect of such an attempt to rein discretion was tested 3 years later in *Setser v. United States*, 566 U.S. ___, 132 S. Ct. 1463, 182 L. Ed. 2d 455 (2012).

In *Setser*, the United States Supreme Court considered whether a statute passed by Congress limited the authority to such an extent that it was totally abrogated under the circumstances underlying the case. The federal sentencing statutes in question—much like Kansas'—addressed some, but not all, multiple sentencing situations. In light of those federal statutes, the question in *Setser* was whether a federal judge had the authority to order a defendant to serve his federal sentence consecutive to a yet-to-be-imposed state sentence. Federal statutes regarding consecutive or concurrent sentences addressed only multiple sentences imposed at the same time or a sentence imposed on a defendant who was already subject to an undischarged term of imprisonment. Neither circumstance applied, but the Court held the federal sentencing judge had the discretion to impose a consecutive sentence.

The *Setser* Court reasoned that the federal sentencing statutes had to be construed in light of "'the common-law background against which the statutes . . . were enacted.'" 132 S. Ct. at 1468. Under that approach, the Court recognized: "Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that

12

have been imposed in other proceedings." 132 S. Ct. at 1468. The Court observed there must be a mechanism to determine whether two or more sentences are concurrent or consecutive, and Congress had done nothing to foreclose the exercise of judges' commonly recognized authority to make the determination. 132 S. Ct. at 1468.

The Court also rejected the defendant's argument that Congress' grant of authority to impose consecutive sentences in "scenario *A* and scenario *B* [means] there is no such discretion in scenario *C*." 132 S. Ct. at 1469. The points made by the Court in rejecting this argument apply equally to Kansas' statutory scheme:

> "The Latin maxim on which Setser relies—*expressio unius est exclusio alterius*—might have application here if the provision in question were a conferral of authority on district courts. Giving sentencing authority in only specified circumstances could be said to imply that it is withheld in other circumstances. Section 3584, however, is framed not as a conferral of authority but as a limitation of authority that already exists (and a specification of what will be assumed when the exercise of that authority is ambiguous). It reads not 'District courts shall have authority to impose multiple terms of imprisonment on a defendant at the same time, etc.' but rather 'If multiple terms of imprisonment are imposed on a defendant at the same time, [etc.]'—quite clearly assuming that such authority already exists. The mere acknowledgment of the existence of certain pre-existing authority (and regulation of that authority) in no way implies a repeal of other pre-existing authority. And that is especially true when there is an obvious reason for selecting the instances of pre-existing authority that are addressed—to wit, that they are the examples of sentencing discretion most frequently encountered." 132 S. Ct. at 1469.

The United States Supreme Court is not alone in reaching the conclusion that the common-law authority to impose a consecutive sentence continues in situations where there is not a legislative directive otherwise. Several state courts have reached the same conclusion. *E.g.*, *State v. Leak*, 297 Conn. 524, 537-39, 998 A.2d 1182 (2010) (courts

13

have "inherent common-law power to stay the execution of their own judgments and thereby order that confinements run consecutively"; power continues in lieu of clear legislative mandate to alter the common law even in the absence of an express statutory conferral of authority); *Schamber v. State*, 152 Ga. App. 196, 198, 262 S.E.2d 533 (1979) (finding sentencing statute not applicable and not "a limitation upon the discretion of the trial court, derived from the common law, to set sentences . . . to commence at the termination of all sentences previously imposed"); *State v. Calley*, 140 Idaho 663, 665, 99 P.3d 616 (2004) (holding that while no sentencing statute permitted a court in one county to impose a sentence consecutive to probation from another county, "[u]nder the common law, the courts in Idaho have discretionary power to impose cumulative sentences"); *Duquette v. Warden, New Hampshire State Prison*, 154 N.H. 737, 743-44, 919 A.2d 767 (2007) (statutory silence regarding authority to impose consecutive sentence did not limit common-law authority; inherent discretionary authority was only limited by certain situations where consecutive sentences were mandated); *State v. Trice*, 159 Or. App. 1, 4-5, 976 P.2d 569 (1999) ("nothing in the language of the statute . . . limits the court in the exercise of its discretion from imposing partially consecutive sentences and concurrent sentences").

1.6. *Kansas decisions predating* Chronister

These cases—both of the United States Supreme Court and of other state courts—are not binding on us. They are merely persuasive support for the holding in *Chronister*. Although not addressing these cases, Quested argues that any reliance on common-law authority, as articulated in *State v. Chronister*, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), is contrary to the reasoning in another Court of Appeals decision, *State v. Crawford*, 39 Kan. App. 2d 897, Syl. ¶¶ 2-3, 185 P.3d 315 (2008). He argues that under *Crawford*, a judge lacks the authority to impose consecutive sentences unless specifically authorized by statute.

14

To better understand the *Chronister* panel's decision and the cases relied upon by the *Crawford* panel, some historical context is helpful. Cases predating *Chronister* generally support the *Chronister* panel's reasoning and, more specifically, the conclusion that a sentencing judge retains the common-law power to impose consecutive sentences in any circumstance where the Kansas Legislature has not restricted the authority or stated a contrary legislative policy. In other words, as stated in one such decision, the common-law rule "should be applied, in the absence of a statute governing the subject, thus recognizing that the statute, *if enacted*, is controlling." (Emphasis added.) *Beck v. Fetters*, 137 Kan. 750, 752, 22 P.2d 479 (1933); see K.S.A. 21-5103(a) (recognizing the criminal code did not entirely displace common law; "where a crime is denounced by any statute of this state, but not defined, the definition of such crime at common law shall be applied"). Kansas cases predating *Chronister* largely reflect this reasoning.

The historical context begins as early as 1855 when the Kansas Territorial Legislature curbed judicial sentencing discretion, requiring a judge to impose consecutive sentences if the defendant had been "convicted of two or more offences before sentence shall have been pronounced upon him for either offense." 1855 Laws of the Kansas Territory, ch. 54, sec. 9. The statute was otherwise silent about the power to impose consecutive sentences.

In 1907, in *State v. Finch*, 75 Kan. 582, 89 P. 922 (1907), this court considered the effect of such a legislative silence. The version of the statute then in place required consecutive sentences if a defendant had been convicted of two offenses during the same court term. A defendant objected when a sentencing judge imposed consecutive terms of imprisonment for convictions entered in different court terms, arguing a consecutive sentence could only be imposed under the circumstances specifically covered by the

15

statute. Noting the statutory silence about his situation, the defendant argued that at common law only a concurrent sentence would be allowed.

The *Finch* court did not accept this interpretation of the common law and, despite the lack of statutory authority for the consecutive nature of the sentence, affirmed the sentencing judge's order of consecutive sentences. The court reasoned that the statute reflected "the legislative policy and the justice of adapting the punishment to the number as well as to the enormity of crimes committed by one person, and, without regard to strict technicality, it is incumbent upon the courts of the state so to conform the procedure as to make the purpose of the law effective." *Finch*, 75 Kan. at 584; see *Beck*, 137 Kan. at 752; see also K.S.A. 21-4601 ("This [sentencing] article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics . . . [and] dangerous offenders shall be correctively treated in custody for long terms as needed."). Hence, although the statute addressed only a limited circumstance—one that did not apply to the defendant's case—the court extended the legislative policy of using consecutive sentences to fit the enormity of the criminal acts and, in doing so, implicitly recognized a judge's common-law authority.

In 1923, the legislature enacted R.S. 62-1512, which mandated consecutive sentences when a defendant had been "convicted of two or more offenses before sentence shall have been pronounced upon him for either offense." In *Beck*, 137 Kan. at 752, this court explained that this statute modified the common-law rule that had provided "that if several sentences of imprisonment are imposed upon a person, covering the same period of time, they will run concurrently unless the court expressly directs that they be served consecutively." The court held a "court must render judgment in conformity with the statutory policy" and impose consecutive sentences as required by the statute. 137 Kan. at 752-53. Nevertheless, the court expressly recognized the common law would have applied in the absence of statute.

16

Then, in 1969, the legislature adopted K.S.A. 21-4608. L. 1969, ch. 180, sec. 21-4608. As with its predecessor statutes, it did not address all sentencing situations where cumulative punishment might be considered. Where the previous statutes had mandated cumulative punishment in some circumstances, the 1969 version reinstated a judge's discretion to impose either concurrent or cumulative punishments when a sentence was imposed *on the same day*. In effect, this clarified that the mandate of the statutes at issue in *Finch* and *Beck* had been repealed. As in this case, the statute did not address the power to impose consecutive sentences in cases where sentencing occurred *on different days*. K.S.A. 21-4608.

Despite this silence, in *Burns v. State*, 215 Kan. 497, 500, 524 P.2d 737 (1974), this court recognized "[t]he authority of the court in ordering consecutive or concurrent sentences for convictions of two or more offenses at the same time *or separate times* is discretionary with the court." (Emphasis added.) 215 Kan. at 500 (citing K.S.A. 1973 Supp. 21-4608). This statement seems to continue the longstanding recognition that a judge retains discretion to impose a consecutive sentence in situations where a statute is silent, as long as that authority is consistent with the legislative policy reflected in the sentencing statutes. Indeed, in *State v. Reed*, 237 Kan. 685, 687, 703 P.2d 756 (1985), this court recognized that during this time period, "the imposition of concurrent or consecutive sentences *in all criminal cases* was placed within the sound discretion of the trial court." (Emphasis added.)

In 1982, the legislature turned to a middle ground regarding judicial discretion, enacting several provisions codified in subsections of K.S.A. 21-4608 that require a judge to impose a consecutive sentence in specific situations—*e.g*., when a defendant commits a new crime while incarcerated or on probation, assignment to a community corrections program, parole, or conditional release. K.S.A. 21-4608. The 1982 amendments also

17

contained provisions requiring judges to impose a consecutive sentence if a defendant committed a new crime while on bond in certain specified circumstances. These are the provisions discussed in *Chronister*, 21 Kan. App. 2d at 593 (citing *Reed*, 237 Kan. 685, and pre-1982 K.S.A. 21-4608), and, although somewhat modified, that apply in this case.

These provisions were "somewhat ambiguous and . . . neglected to explicitly include" the situation that arose in *Reed*, 237 Kan. at 688-89. Reed was released on bond prior to trial. While released, Reed committed a theft and a burglary, and the district court held the statute mandated consecutive sentences. This court affirmed, even though the statutes did not explicitly refer to pretrial bond situations. In reaching this decision, this court concluded that the legislature intended to "cover the waterfront" of situations where a defendant committed a crime while temporarily released from custody. 237 Kan. at 688. The court held that the legislative scheme mandated a consecutive sentence even though the mandate was not explicit. 237 Kan. at 688-90. Logically, *Reed* supports *Chronister*: Statutory silence as to a unique circumstance does not mean a sentencing judge does not have consecutive sentencing authority. In *Reed*, as in *Finch*, this court considered a judge's common-law authority to impose a consecutive sentence when it would further legislative policy. In *Reed*, this meant the legislature had restricted the judge's authority whereas in *Finch* it meant the legislature had not limited discretion.

As *Chronister* and these other cases recognize, nothing suggests the Kansas Legislature ever intended to strip sentencing judges of their common-law power to impose a consecutive sentence. At most, the history suggests the legislature has at times directed a sentencing judge to impose a consecutive sentence in certain circumstances. But the common-law power to impose a consecutive sentence has been abrogated only when a statute addressing a situation has been adopted, and no such statute applies here. Even if K.S.A. 21-4608(h) is interpreted as applying, it does not require a concurrent sentence; it merely indicates the judge "may" impose one.

18

1.7. *Post*-Chronister *cases supporting Quested's position are distinguishable*

As previously noted, Quested relies on *Crawford*, decided 13 years after *Chronister*. In Crawford, a Court of Appeals panel addressed a different situation and held that there was no statutory authority to impose an adult sentence consecutive to a juvenile adjudication. *Crawford*, 39 Kan. App. 2d 897, Syl. ¶ 2. The panel relied heavily on this court's decision in *In re W.H.*, 274 Kan. 813, 817-18, 57 P.3d 1 (2002), in which we declined to find any common-law power to order consecutive sentences in juvenile cases given that "[n]owhere in [the Kansas Juvenile Justice Code (KJJC), K.S.A. 38-1601 *et seq.*] did the legislature provide for consecutive sentencing." 274 Kan. at 822. In rejecting common-law power, we spoke in broad terms about a Kansas judge's sentencing authority, noting: "From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences." 274 Kan. at 817.

To take this broad statement at face value and view it in isolation could lead to a misunderstanding of the degree of reliance on statutory authority. As our discussion of past cases reflects, the reliance has not meant that there must be explicit statutory authorization to impose a consecutive sentence. Rather, it has often meant that the power to impose a consecutive sentence continues to exist as long as its exercise is consistent with legislative enactments.

Further, the *In re W.H.* court itself noted its reasoning was limited to the situation involving a young adult offender and, in doing so, expressly distinguished that case from the situation currently before us. The court distinguished the juvenile sentencing scheme, which in large part had no common-law counterpart, from the adult scheme. Specifically,

19

the court acknowledged that in adult sentencing situations the legislature had recognized consecutive sentences, at least in some situations. 274 Kan. at 814-15. And the court did not reverse or question past decisions such as *State v. Reed*, 237 Kan. 685, 703 P.2d 756 (1985), where this court had mandated the use of consecutive sentences despite legislative silence. Moreover, the *In re W.H.* court was particularly persuaded by another fact that makes Quested's case distinguishable: "Kansas has . . . no history of court decisions with legislative acquiescence supporting an implied power to impose consecutive [juvenile] sentences where the statute is silent." 274 Kan. at 818. The court in *In re W.H.* had no case that recognized any authority, common law or otherwise, for imposing consecutive juvenile sentences.

Here, we have at least 20 years of legislative acquiescence since *Chronister*, 21 Kan. App. 2d 589, and nearly or over a century's since *Beck*, 137 Kan. at 752, and *Finch*, 75 Kan. at 584. The doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so. Indeed, in *Beck* this court acknowledged the legislature's power to curb judicial sentencing discretion through explicit statutes. *Beck*, 137 Kan. at 752. But beginning with *Finch*, the court recognized that a legislative restriction on sentencing authority in one situation did not foreclose the continued exercise of discretion in another, unless, as in *Reed*, exercising discretion would be against legislative policy.

The legislature's continued, long-term acquiescence is a strong indication that the *Chronister* court effected legislative intent when it determined the legislature meant for Kansas judges to have the discretion to impose consecutive sentences when a defendant commits crimes in multiple counties. See *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. ___, 134 S. Ct. 2398, 2411, 189 L. Ed. 2d 339 (2014); but see *U.S.D. No. 501 v. Baker*, 269 Kan. 239,

246-47, 6 P.3d 848 (2000) (recognizing that legislative inaction is not always indicative of legislative intent).

Hence, our situation is distinguishable from juvenile offender situations in *In re W.H.* and *Crawford*, and those cases do not compel us to reject *Chronister* or its reasoning. Quested has not persuaded us we should abandon that precedent.

1.8. Osbey *and legislative history*

Although not cited by Quested, the dissent points us to a line of cases beginning with S*tate v. Osbey*, 238 Kan. 280, 288, 710 P.2d 676 (1985), in which this court, without citation to any authority, announced that "[i]n Kansas, sentencing of an individual is strictly controlled by statute." That statement seems contrary to the cases we have discussed today where a judge's common-law authority has filled gaps in legislation. Moreover, the legislature has itself declared: "The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state." K.S.A. 77-109. Because statutory silence confronted both the sentencing court and this court, the sentencing statutes stand in need of the aid of common-law rules. See *Setser v. United States,* 566 U.S. ___, 132 S. Ct. 1463, 1467, 182 L. Ed. 2d 455 (2012) (recognizing that someone must answer the question of whether a defendant's multiple sentences will be served consecutively or concurrently and there must be some source for the authority to make that decision).

Thus, *Osbey*'s statement that sentencing is strictly controlled by statute is suspect insofar as its simplicity fails to expose nuance. Even so, the intent of that statement remains valid because, as our discussion illustrates, we have measured the common-law rule against legislative policy. Common-law rules can only apply when consistent with

21

other sentencing statutes. Statutory policy has always controlled. And where a statute covers a subject, these cases illustrate that a judge may not rely on the common law for contrary authority.

These principles are consistent with the outcome and the general rationale of this court's decisions in those cases where we have stated that sentencing is strictly controlled by statute. Often these cases dealt with statutes that explicitly covered a sentencing issue. For example, in *Osbey* and many of the other cases, the issue related to whether a disposition was legal, a subject *Osbey* correctly noted was covered by statute. See *State v. McCarley*, 287 Kan. 167, 176, 195 P.3d 230 (2008) (sentence for a level 8 person felony does not conform to the statutory provision for a level 5 person felony, the offense of conviction, and is therefore illegal); *State v. Martin*, 285 Kan. 735, 738-39, 175 P.3d 832 (2008) (K.S.A. 2005 Supp. 21-4716 controls procedure for departing from presumptive sentence); *State v. Campbell*, 273 Kan. 414, 421, 44 P.3d 349 (2002) (K.S.A. 2001 Supp. 21-4603d dictates allowable dispositions at time of sentencing and does not allow a judge to "intentionally or inadvertently fail to impose one of the statutory dispositions"); *Osbey*, 238 Kan. at 287 (same).

The other cases deal with a sentencing court's power to modify sentences. In those cases, the court reasoned statutes limited the court's power, allowing only the correction of arithmetic and clerical errors. Also, the legislative background of the current sentence-modification statute revealed the legislature's intention to repeal and not replace statutes that had allowed a modification within a specified time of the sentence's imposition. See *State v. Anthony*, 274 Kan. 998, 1000-02, 58 P.3d 742 (2002); see also *State v. Guder*, 293 Kan. 763, Syl. ¶ 1, 267 P.3d 751 (2012) (following *Anthony*); *State v. McKnight*, 292 Kan. 776, 781-83, 257 P.3d 339 (2011) (at probation revocation hearing, sentencing judge had statutory authority to modify original sentence and impose shorter sentence with no postrelease supervision); *State v. Saft*, 244 Kan. 517, Syl. ¶ 1, 769 P.2d 675

(1989) (statute in effect set a temporal cutoff for modifying sentence and limited court's ability to do so outside that time frame); *State v. Vanwey*, 262 Kan. 524, Syl. ¶ 4, 941 P.2d 365 (1997) (same).

The rationale of these decisions is largely consistent with the rationale of our decision today. If a statute covers a subject matter, it controls. Further, any common-law rule contrary to legislative policy is invalid even if a statute is silent on the subject matter—*e.g.*, in a situation such as in *Beck*, 137 Kan. 750, or *Anthony*, 274 Kan. 998. But to say that statutes control sentencing to the total exclusion of common law is contrary to the cases we have discussed, to K.S.A. 77-109, and, as we will next discuss, to the legislative history and background of K.S.A. 21-4608 and the sentencing guidelines.

Speaking of the 1969 codification of the criminal law that included K.S.A. 21-4608, Professor Paul E. Wilson, who was on the Judicial Advisory Committee that worked on the codification, explained the common law's influence in the new criminal code:

> "The legislature alone has the power to prohibit and provide penalties for conduct that is deemed inimical to the best interests of the State. At the same time, the common law has played an important role in determining the substance of the criminal law of Kansas. While the legislature has the exclusive power to prohibit conduct, the prohibitions are often stated in terms of common law concepts. Thus, reference must often be made to the common law in order to understand legislative intent." Wilson, *New Bottles for Old Wine: Criminal Law Revision in Kansas*, 16 Kan. L. Rev. 585 (1968).

With respect to sentencing, Professor Wilson observed: "The view has been taken that the fixing of sentence is a judicial function over which the court should have the ultimate control, *within the limits fixed by the legislature*." (Emphasis added.) 16 Kan. L. Rev. at

603. As applicable to Quested's case, the legislature has not stated a limit on the cumulative length of his multiple sentences.

To suggest the common law has no role in sentencing, the dissent cites a 1972 law review article in which the author, Barkley Clark, observed: "The comprehensiveness of the state Criminal Code, coupled with the elaborate procedural safeguards given to defendants by the equally comprehensive Code of Criminal Procedure, suggests that the legislature has preempted the criminal law field, except for matters such as minor traffic violations." *State Control of Local Government in Kansas: Special Legislation and Home Rule*, 20 Kan. L. Rev. 631, 672 (1972). But this article speaks to an issue that has no bearing on our analysis—the power of cities to enact ordinances that might conflict with state criminal law. In context, the comment does not suggest the legislature intended for the 1969 criminal code to leave no place for the common law nor does it purport to rebut the legislative history and comments of Professor Wilson, one of the bill's drafters.

Further, the legislative history surrounding the existence of the Kansas Sentencing Guidelines reinforces that statutory law does not strictly control sentencing to the exclusion of a judge's discretion when that discretion is not limited by a statute; a sentencing court can, and sometimes must, do more than simply look to the statutes. Granted, the legislature clearly expressed the intent to curtail some judicial discretion, which had resulted in sentencing disparity. See Minutes, Senate Judiciary Committee, S.B. 479, January 14, 1992 (Attachment 1); see also Minutes, Senate Judiciary Committee, S.B. 479, January 16, 1992 (Attachment 1 [Gottlieb, *A Review and Analysis of the Kansas Sentencing Guidelines*, 39 Kan. L. Rev. 65, 67 (1991)]); Minutes, House Judiciary Committee, March 18, 1992 (Attachment 2) (noting it is well known that a crime committed in some counties will receive a harsh punishment while the same crime will get probation in another county).

At the same time, however, there was much debate about how strictly a sentencing judge's discretion should be curbed and how much legislative "control" should be exercised over a sentence. Those in favor of the guidelines argued: "The existence of definite sentencing standards eliminates unstructured judicial discretion which, it is argued, produces unwarranted disparity." Gottlieb, 39 Kan. L. Rev. at 67. On the other hand, "[i]t will be a mistake . . . to eliminate judicial discretion. . . . [I]f sentencing is to be humane, it will continue to require human judgment." 39 Kan. L. Rev. at 89.

In the end, although the legislature considered exercising complete control over sentencing, it decided to alleviate opponents' concerns by assuring that sentencing discretion remained—sentences were not subject to absolute statutory control. Indeed, on January 24, 1992, the Senate Judiciary Committee made it a point to add language to the minutes (possibly in response to a request for a clear statement of legislative intent) indicating: "[T]he Committee recognizes that *the guidelines are designed to regulate judicial discretion, not to eliminate it*." (Emphasis added.) Minutes, Senate Judiciary Committee, S.B. 479, January 24, 1992. This understanding also permeated the later hearings before the House Judiciary Committee. Minutes, House Judiciary Committee, S.B. 479, March 20, 1992 (Attachment 1, p. 5.) ("The sentencing function of the court was intended to be discretionary. . . . Certainly the legislature must give guidance to the courts by establishing the public policy and perimeters on sentences. However, when those perimeters become too restrictive to adapt the sentence to the characteristics of an individual case, substantial injustices will occur.").

Although we find no clear legislative history discussing the legislature's intent regarding whether a judge retained the authority to impose consecutive sentences in situations not controlled by the statute, courts generally presume that the legislature acts with full knowledge of existing law. *State v. Reese*, 300 Kan. 650, 656, 333 P.3d 149 (2014). That law includes the common-law rule recognizing that a sentencing judge has

25

the discretion to decide whether to impose a concurrent or a consecutive sentence and the caselaw of this court in which we have filled the gap in previous statutes by allowing the exercise of that common-law authority when doing so was consistent with the legislative policy. Further, as this court recognized in *State v. Chronister*, 21 Kan. App. 2d 589, 593-94, 903 P.2d 1345 (1995), it is doubtful that the legislature intended to strip courts of the power to impose consecutive sentences in cases such as the present one where crimes were committed in two different Kansas counties. This result would indeed be unreasonable or absurd, and "'the legislature is presumed to intend that a statute be given a reasonable construction.'" 21 Kan. App. 2d at 593; see *State v. Murdock*, 299 Kan. 312, 320, 323 P.3d 846 (2014) (Rosen, J., dissenting) (explaining that part of the reason the legislature later enacted the KSGA was "to address concerns regarding disparity in sentencing practices across the state"). This is especially true under the facts of this case where Quested's criminal acts in Dickinson and Saline counties were related and as part of one crime spree. If convicted in one case for all the crimes, the sentencing judge would have had express authority under K.S.A. 2006 Supp. 21-4720(b) to impose either concurrent or consecutive sentences.

Significantly, K.S.A. 2006 Supp. 21-4720(b) of the KSGA incorporates a few provisions from the 1969 law, including K.S.A. 21-4608. And when enacting the KSGA, the legislature did not repeal K.S.A. 21-4601, which provides: "This [sentencing] article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics . . . [and] dangerous offenders shall be correctively treated in custody for long terms as needed." While most provisions of the KSGA do not fall within the scope of this provision, K.S.A. 21-4608 does. And as we have discussed, that provision was applicable at the time of this court's decisions in *Burns v. State*, 215 Kan. 497, 500, 524 P.2d 737 (1974), and *Reed*, 237 Kan. 685.

26

Arguing for a contrary result, the dissent would hold that a sentencing judge can only impose a concurrent sentence since no statute explicitly authorizes a consecutive sentence. Yet, no statute or prior caselaw directly supports that conclusion. With no statute to construe in Quested's favor, the rule of lenity—a rule of statutory construction the dissent invokes—plays no part. Even when it does, it is "subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." See *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012). That design is furthered by allowing a judge to exercise discretion to impose consecutive sentences when a defendant engages in a crime spree in multiple counties, the same as if the defendant were to have committed all the crimes in one county where the case could have been treated as a multiple conviction case under K.S.A. 2006 Supp. 21-4720(b). Moreover, if we were to simply mandate a concurrent sentence when no statute compels that result, we would necessarily have to supply words the legislature did not write. The dissent's solution thus falls subject to its own criticism, as we would again be at fault for recognizing sentencing authority not "strictly controlled by statute." See *McCarley*, 287 Kan. at 176.

1.9. *Conclusion*

We choose, in the absence of a statute directly speaking to the issue, to rely on over a century of this court's caselaw regarding adult criminal sentencing in which this court has recognized that Kansas judges have the discretion to order either a consecutive or concurrent sentence as long as doing so is consistent with legislative policy. Historical perspective and practical necessity compel us to rely on common law in this limited and unique circumstance.

We hold that a sentencing judge in one Kansas county has the authority to order a sentence to be served consecutive to a sentence previously imposed by a sentencing judge

27

in another Kansas county. We, therefore, agree with the Court of Appeals' decision to affirm the district court's denial of Quested's motion to correct an illegal sentence.

Affirmed.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

BEIER, J., concurring:  I join in the majority's result and in its rationale based on statutory construction.

* * *

NUSS, C.J., dissenting:  I respectfully dissent.

Thirty years ago this court expressly declared that "[i]n Kansas, sentencing of an individual is strictly controlled by statute." *State v. Osbey*, 238 Kan. 280, 288, 710 P. 2d 676 (1985). This court has never disavowed this declaration. Indeed, we have often repeated it as a ruling principle.

"Control" has been defined as "[t]o exercise authority or dominating influence over; direct; regulate." The American Heritage Dictionary of the English Language 290 (1971). "Strictly" has been defined as "closely, precisely, rigorously; stringently." Black's

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 106,805 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.

Law Dictionary 1591 (rev. 4th ed. 1968). In a similar vein, "strict" has been defined as "2. *Complete; absolute*; strict loyalty. 3. *Kept within narrow and specific limits*: a strict application of a law. . . . 5. *Enforced or maintained rigorously; stringent*: strict standards." The American Heritage Dictionary of the English Language 1275 (1971).

So our court's chosen language of "strictly controlled" means that statutes rigorously and exclusively regulate all sentencing in Kansas. Accordingly, if the authority to impose consecutive sentences—as are involved in the instant case—is not contained within Kansas statutes, there simply is no authority to do so. And because the majority opinion admits there is no such statutory authority, our 30-year-old declaration from *Osbey* applies. And our analysis ends.

But the majority asserts that a Court of Appeals panel opinion which directly conflicts with this principle—*State v. Chronister*, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995)—is not only controlling but also safeguarded by stare decisis. Like Justice Johnson in his dissent, I too am unclear how an opinion from our intermediate appellate court that was released 10 years after our unanimous opinion in *Osbey* can both trump our stated principle and carry the protection of stare decisis—while *Osbey* does not.

The majority appears to reach this conclusion by asserting that "strictly controlled by statute" only applies where the statute has actually spoken and is clearly applicable to the situation. For example, if the statute provides that a sentence must be imposed within certain limits and the resulting sentence is outside of those statutory limits, the sentence is improper. Under this reading, however, there is little reason for the *Osbey* court to have added the modifier "strictly" to the word "controlled"—since to control already means to regulate.

As an alternative to assailing the meaning of *Osbey*'s plain language, the majority also appears to contend that the *Osbey* court—and all those Kansas courts listed in Justice Johnson's dissent that have recited this language since 1985—obviously overstated what should have been communicated. In other words, those courts were wrong to convey the message that the legislature intends to fully occupy the sentencing field. I disagree: *Osbey*'s precise language correctly states Kansas law.

The clearest support from this court for my disagreement is *In re W.H.*, 274 Kan. 813, 57 P.3d 1 (2002). There, the respondent argued that the district court had no authority to impose consecutive juvenile sentences upon him and that the Court of Appeals was wrong to find such authority. We agreed with the respondent, vacating the sentences and remanding for resentencing.

At the core of this court's opinion in *In re W.H.* is a firm rejection of the rationale of the Court of Appeals. The panel had reasoned that while the Kansas Juvenile Justice Code (KJJC) provided no authority for imposition of consecutive sentences, the common law could just "fill it in." *In re W.H.*, 30 Kan. App. 2d 326, 41 P.3d 891 (2002). Of equal importance to our court's rejection of that rationale is the analytical path it took to get there.

At the very beginning of our court's analysis, it noted the panel had relied upon New Jersey caselaw to conclude, among other things, that the imposition of consecutive sentences is an inherent power of the judiciary based upon the common law. "'"The great weight of authority in this country is that, without any statutory provision for consecutive sentences, the power to impose them resides in the court."'" *In re W.H.*, 274 Kan. at 817 (quoting *State In Interest of J.L.A.*, 136 N.J. 370, 374, 643 A.2d 538 [1994] [quoting *State v. Mahaney*, 73 N.J.L. 53, 56, 62 A. 265 (Sup. Ct. 1905)]). And the New Jersey Supreme Court therefore concluded that in the absence of an express statutory

30

prohibition, a trial judge had the power to impose consecutive sentences. 274 Kan. at 816-17 (discussing *State In Interest of J.L.A.*, 136 N.J. 370).

The *In re W.H.* court correctly observed, however, that Kansas' legal history—from as far back as our territorial days in 1855—was quite different from New Jersey's:

"From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences. *Beck v. Fetters*, 137 Kan. 750, 751-52, 22 P.2d 479 (1933); see *State v. Finch*, 75 Kan. 582, 89 P. 922 (1907). The common-law rule was abrogated by statute in 1855:

'When any person shall be convicted of two or more offences before sentence shall have been pronounced upon him for either offence, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction *shall commence at the termination* of the term of imprisonment to which he shall be adjudged upon prior convictions.' (Emphasis added.) 1855 Laws of the Kansas Territory, ch. 54, § 9." 274 Kan. at 817.

The *In re W.H.* court further observed that this Kansas statutory law authorizing consecutive sentences had essentially been the same for 108 years:

"This law, though codified at various places, remained unchanged until 1963:

'Section 62-1512 of the General Statutes of 1949 is hereby amended to read as follows:  Sec. 62-1512. Whenever a person is convicted of two or more offenses charged in one or more informations, indictments, or complaints, whether such convictions take place at the same or at separate times, it shall be the duty of the sentencing judge to prescribe whether the sentences shall be served concurrently or consecutively. Whenever sentences are

31

pronounced in two (2) or more separate cases upon the same day and it is the order of the judge that the sentences shall be served consecutively, the journal entries shall reflect the sequence in which the sentences were pronounced: *Provided,* That whenever the record is silent as to the manner in which two (2) or more sentences are to be served, they shall be served concurrently, each commencing on the date it was imposed.' L. 1963, ch. 306, § 1."
*In re W.H.*, 274 Kan. at 817-18.

The court also observed New Jersey's legislative acquiescence over a period of years to consecutive sentences imposed without express authority in its state young adult offenders code. By contrast, Kansas had no such code and no history of legislative acquiescence to court decisions on this issue.

The *In re W.H.* court therefore decided that "[g]iven the disparity between New Jersey and Kansas, we conclude that *J.L.A.* provides little support for implied consecutive sentencing power under the KJJC." 274 Kan. at 818.

In addition to the court's express rejection of any notion of a lack of statutory consecutive sentencing authority being "filled in" from the common-law, it implicitly rejected any notion of such lack of authority being filled in by other sources, *e.g.*, the Kansas Sentencing Guidelines Act (KSGA).

This court looked at the similarities between the KJJC for sentencing juveniles and, as in the instant case, the KSGA for sentencing adults.

"Adoption of the juvenile sentencing scheme follows upon the heels of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.* Some of the same philosophy which motivated adoption of the KSGA as to classification and definite terms is incorporated into the KJJC. W.H. makes a convincing argument

based upon such similarities. W.H. argues that provisions of K.S.A. 38-16,129 are similar to the provisions of the KSGA. Both provide for presumptive sentences based on the offender's criminal history and both provide that a presumptive sentence must be imposed unless a departure under circumstances set forth is approved. K.S.A. 38-16,132; K.S.A. 21-4716. Appeals may not be taken if the sentences fall within the presumptive range. K.S.A. 38-1681(c)(2)(A); K.S.A. 21-4721(c)(1). In spite of these similarities, W.H. notes that there is a marked difference between the KSGA and the KJJC on the subject of consecutive sentences." *In re W.H.*, 274 Kan. at 822-23.

The court then examined the contrast between the sentencing schemes of the KJJC and KSGA:

"The KSGA expressly empowers a district court to impose consecutive sentences in K.S.A. 21-4720(b) and K.S.A. 21-4608: 'The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases. Whenever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently . . . .' K.S.A. 21-4720(b). 'When separate sentences of imprisonment for different crimes are imposed on a defendant on the same date, including sentences for crimes for which suspended sentences, probation or assignment to a community correctional services program have been revoked, such sentences shall run concurrently or consecutively as the court directs.' K.S.A. 21-4608(a).

"The KJJC provides no such power and is silent on the question of consecutive sentences. We agree with W.H. that *expressio unius est exclusio alterius* applies. Consecutive sentences are expressly permitted and provided for in the KSGA of the adult criminal code but that same power is not provided for in the KJJC. Compare *State v. Adam M.,* 129 N.M. 146, 2 P.3d 883 (Ct. App. 2000);

33

*S.G.W. v. People,* 752 P.2d 86, 90 (Colo. 1988); *In re Christopher V.,* 207 Conn. 270, 276, 540 A.2d 700 (1988); but see, *In re Caldwell,* 76 Ohio St. 3d 156, 666 N.E.2d 1367 (1996). We conclude that the Kansas Legislature by its exclusion regarding consecutive sentences did not authorize the imposition of consecutive sentences under the KJJC." *In re W.H.*, 274 Kan. at 823.

Inherent in this court's acceptance of the respondent W.H.'s *expressio unius est exclusio alterius* argument is a rejection of any argument that the express KSGA statutory authority for consecutive sentencing somehow could be exported to fill in where the KJJC was silent—regardless of the two schemes' obvious similarities. This reinforces the controlling point the court made earlier when it rejected use of the common law as a filler, *i.e.*, "sentencing of an individual is strictly controlled by statute." Osbey, 238 Kan. at 288.

Points similar to those established in *In re W.H.* were made 6 years later by the Court of Appeals in *State v. Crawford*, 39 Kan. App. 2d 897, 185 P.3d 315 (2008). There, Crawford was certified as an adult and pled no contest to several felonies. Because he was already on probation for juvenile adjudications, the court ordered his adult sentences to run consecutive to his juvenile sanction. The *In re W.H.* court had addressed whether juvenile sentences could be imposed to run consecutive to each other. And *Crawford* now addressed the related question of whether an adult sentence could run consecutive to the previously imposed juvenile sentence.

The *Crawford* panel answered this question "no." The panel began its analysis by acknowledging "[w]e must examine statutory concepts for this issue because common-law principles do not apply. Our Supreme Court has recognized the power to impose consecutive sentencing is found only within statutory authority and not through common-law authority." 39 Kan. App. 2d at 899. It then quoted from *In re W.H.*:

34

"'From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences. [Citation omitted.] The common-law rule was abrogated by statute in 1855.'" *Crawford*, 39 Kan. App. 2d at 899 (quoting 274 Kan. at 817).

The *Crawford* panel proceeded to examine all the statutes that authorize consecutive sentences—which it noted covered three types of cases. K.S.A. 21-4608 (when the court is imposing multiple sentences); K.S.A. 21-4720(b) (as an exercise of judicial discretion); and K.S.A. 21-4603e(f) (when sentencing for certain specified crimes committed on or after July 1, 1993). The panel found that none of these statutes authorizing the imposition of consecutive sentences expressly included probations or incarcerations arising from juvenile adjudications. It also determined from caselaw that juvenile adjudications are not the functional equivalents of adult convictions. So the panel concluded that none of these statutes within the KSGA provided consecutive sentencing authority for juveniles. 39 Kan. App. 2d at 901.

As for the next possibility—that the KJJC itself provided authority for the imposition of consecutive juvenile sentences—the *Crawford* panel again looked to *In re W.H.* for guidance. The *Crawford* panel concluded:

"Such guidance is clear. The rule of *expressio unius est exclusio alterius* governs in situations where a trial court utilizes juvenile adjudications for sentencing purposes.

"Based on the legislature's exclusion of specific language listing juvenile adjudications [from the KJJC], we conclude that body meant to exclude juvenile adjudications from cases calling for consecutive adult sentences. The court here

35

had no authority to impose a consecutive sentence. Thus, this was an illegal sentence." *Crawford*, 39 Kan. App. 2d at 903.

Accordingly, although Crawford was certified as an adult, the panel vacated his sentence and remanded for one that was not consecutive to his juvenile sanction. 39 Kan. App. 2d at 904.

To summarize, *In re W.H.* establishes that juvenile sentences could not be ordered to run consecutively because there was no statutory authority in the KJJC to do so. And *Crawford* logically extends *In re W.H.* to conclude that an adult sentence could not be ordered to run consecutive to a juvenile sentence because there was no statutory authority—in either the KJJC or the KSGA—to do so. Neither *In re W.H.* nor *Crawford* has been overruled by any appellate court.

Moreover, to borrow the majority's use of legislative acquiescence to court decisions as support for its position, I note that neither *In re W.H.*'s nor *Crawford*'s result has been changed by the legislature. Given this, I question whether legislative inaction truly buttresses the majority's outcome. See *U.S.D. No. 501 v. Baker*, 269 Kan. 239, 246-47, 6 P.3d 848 (2000) ("Legislative inaction is not necessarily indicative of legislative intent.").

While neither *In re W.H.* nor *Crawford* directly quotes *Osbey*, effectively they rely upon its articulated principle. Moreover, this court has cited *Osbey* or its principle as authority in multiple cases—many of which are placed in question by today's majority opinion. For example, this court quoted *Osbey*'s language in *State v. Anthony* 274 Kan. 998, 999, 58 P.3d 742 (2002). There, we unanimously rejected a district court's purported authority to modify a felony DUI sentence after imposition because the KSGA was silent on that issue. 274 Kan. at 1001-02; see also *State v. Miller*, 260 Kan. 892, 900, 926 P.2d

36

652 (1996) (same for other felony sentences). In other words, we interpreted KSGA silence about the power to order sentence modification to mean district courts lack that authority. And we reached this conclusion even though district courts had modification authority at common law. See *State v. Hughes*, 35 Kan. 626, 633, 12 P. 28 (1886).

By not honoring *Osbey*'s declared principle, the majority opinion now casts doubt on our approach to the KSGA applied in *Anthony* and other similar cases in the past. It also invites argument in future cases that district courts possess all sentencing authority—from the common law or otherwise—that is not expressly addressed by the legislature in the KSGA.

So I stand by *Osbey*'s declaration. That is, the legislature has reserved to itself the power for authorizing consecutive sentences—and not just in the KJJC. This principle applies to adult Quested and the KSGA. And because the legislatively-created KSGA does not authorize imposing consecutive sentences for his situation, he cannot be so sentenced. Any fix lies with the legislature.

\* \* \*

JOHNSON, J., dissenting:  I dissent. I can understand the majority's belief that granting a sentencing judge the authority to impose a sentence to run consecutively to a prior sentence imposed in a different case, in a different county, on a different day, by a different judge could fit within the overall statutory sentencing scheme in Kansas. But if the majority is truly convinced that the legislature intended for a sentencing judge to have that discretion, our most recent caselaw provides only two available avenues:  (1) Find the consecutive sentencing authority through a reasonable interpretation of the statutory language; or (2) if the intended provision cannot be found in the statutory language, let the legislature remedy its omission.

37

"'[A]ppellate courts cannot delete vital provisions or add vital omissions to a statute if the legislature failed to enact the change as intended under any reasonable interpretation of the language used, *regardless of the legislature's intention.* Only the legislature may remedy these types of error.'" (Emphasis added.) *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 476, 284 P.3d 1049 (2012) (quoting *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 464-65, 228 P.3d 403 [2010]).

The majority hints at finding statutory support in the language of K.S.A. 21-4608(h), but apparently abandons that effort because the parties did not argue the ambiguities of the provision. That position is somewhat curious, given that the State urges us to affirm based on *State v. Chronister*, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), which in turn relied upon K.S.A. 21-4608(h), as will be discussed later.

Similarly, the majority declines to take the straightforward tack of using the language of K.S.A. 2006 Supp. 21-4720(b) as a conduit for its perceived legislative intent that a sentencing judge in one Kansas county has the authority to impose a sentence consecutive to a sentence previously imposed in another Kansas county. As the majority recites, the first sentence of that subsection states: "The sentencing judge shall *otherwise* have discretion to impose concurrent or consecutive sentences in multiple conviction cases." (Emphasis added.) K.S.A. 2006 Supp. 21-4720(b). The majority eliminates that sentence as a source of statutory authority in this case because our prior caselaw, *e.g.*, *State v. Bolin*, 266 Kan. 18, 19, 968 P.2d 1104 (1998), *State v. Koehn*, 266 Kan. 10, 17, 966 P.2d 63 (1998), and *State v. Roderick*, 259 Kan. 107, 113-14, 911 P.2d 159 (1996), has defined the phrase "multiple conviction case" as being multiple counts under one charging document. Those cases arose under a different context, and one analytical path would be to limit their effect to the actual holdings in the respective case, much as the majority attempts to do with those cases that declare that criminal sentencing is strictly

38

controlled by statute. But I believe there are reasons, including a subsequent statutory change, which indicate that the legislature intended multiple conviction cases under K.S.A. 2006 Supp. 21-4720(b) to be something different than the "multiple sentences" scenarios under K.S.A. 21-4608. Otherwise, this would be a concurring opinion. But my point is that a route more consistent with our recent analytical framework of finding authority within the statutory language was available to, but rejected by, the majority.

Instead, the majority manufactures a heretofore unknown paradigm, whereby the courts can discern a common-law sentencing authority that can be applied to partially modify or intensify the statutory sentence imposed, so long as the added common-law component has not been explicitly prohibited by the statutory language. Then, making that hybrid system even more curious, the majority apparently looks to legislative intent to determine the common-law component that can be added to the statutorily authorized sentence.

Specifically, the majority says that the sentencing statutes do not expressly address the situation presented here, *i.e.*, the statutes are silent; that such legislative silence creates an ambiguity; and that "[w]hen faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to cannons of construction, legislative history, the circumstances attending the statute's passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." Slip op. at 8.

I am confused as to why the majority must endeavor to ascertain legislative intent, if it is going to fill the statutory gap with the common law. The common law is defined as "[t]he body of law derived from judicial decisions, rather than from statutes or constitutions; Caselaw." Black's Law Dictionary 334 (10th ed. 2014). The Kansas Legislature can abrogate the common law, but it cannot *make* Kansas common law.

39

Moreover, the majority's thought process of using statutory silence to trigger an attempt to ascertain legislative intent in order to determine the common law that then can be applied to fill the gap in the legislature's statutory scheme left by legislative silence strikes me as dizzyingly circular.

Further, I am unclear as to how to apply the canons of construction to silence. For instance, how does one give common words their ordinary meanings, when there are no words? How does one consider the effect the statute may have under various constructions of silence? Perhaps more importantly, if it is necessary to construe statutory silence to ascertain legislative intent, then the majority's later declaration that the rule of lenity is inapplicable because there is "no statute to construe in Quested's favor" is inconsistent, at best. Slip op. at 26-27; see *State v. Thompson*, 287 Kan. 238, 249, 200 P.3d 22 (2009) (statutory silence and ambiguity is construed in favor of the defendant pursuant to the rule of lenity). If the majority can construe the statutory silence on consecutive sentencing in favor of the State's position, is that not construing the silence-creating statutory ambiguity against the defendant?

In short, it appears to me that all of the majority's discussion of legislative intent is superfluous and unavailing when considering its proposition that a district judge can invoke common-law sentencing authority wherever it is not prohibited by statute. The question is whether the majority's new hybrid sentencing scheme can withstand closer scrutiny. I think not.

The majority is apparently perplexed that our sentencing statutes appear to provide disparate treatment to a defendant whose crime spree crossed county lines. It points out that if Quested had been convicted for all the crimes in one case in one county by one judge, K.S.A. 2006 Supp. 21-4720(b) would have explicitly authorized consecutive sentencing. Pointedly, however, all but one member of the majority was involved in the

40

recent unanimous decision in *State v. Ardry*, 295 Kan. 733, 736-37, 286 P.3d 207 (2012), which rejected the Court of Appeals' policy argument that enforcing the literal language of K.S.A. 22-3716(b) to permit the imposition of a lesser sentence for those whose probation is revoked when such reduction was unavailable to a defendant who did not violate probation would "allow similarly situated defendants to receive different sentences." The disparate result argument did not deter the *Ardry* court from giving effect to what the legislature actually said. Then, *Ardry* quite plainly and unequivocally explained that "only the legislature may decide whether the statutory sentencing scheme contains inequitable inconsistencies." 295 Kan. at 737. Apparently the current court majority has changed its mind about which branch of government must fix a perceived inequitable inconsistency in statutory sentencing provisions. I stand by the holding in *Ardry*.

A compelling reason for our prior judicial restraint is that, if the court guesses wrong about what the legislature truly intended to say, we have invaded the province of the legislative branch. Thus, for at least three-fourths of a century, this court has declined to judicially legislate, even to "fix" what some might have perceived to be a legislative gap, oversight, or silence. See *Russell v. Cogswell*, 151 Kan. 793, 795, 101 P.2d 361 (1940) ("No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used*, the defect is one which the legislature alone can correct."); accord *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013); *State v. Comprehensive Health of Planned Parenthood*, 291 Kan. 322, 357, 241 P.3d 45 (2010); *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010); *State v. Horn*, 291 Kan. 1, 12, 238 P.3d 238 (2010); *State v. Sandberg*, 290 Kan. 980, 989, 235 P.3d 476 (2010); *State v. Johnson*, 289 Kan. 870, 879, 218 P.3d 46 (2009); *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 293, 864 P.2d 1161 (1993); *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 (1963); *In re Tax Appeal of Graceland College Center*, 40 Kan. App. 2d 665, 679, 195 P.3d 245 (2008).

The majority says that it feels compelled by its perceived "practical necessity" to manufacture its new hybrid sentencing paradigm "in this limited and unique circumstance." Slip op. at 27. I read that explanation as merely a feeble attempt to excuse breaking the rules to attain a desired result. The ostensible compulsion to take a limited and unique analytical pathway is apparently found in the majority's declaration (unsubstantiated by any evidence in the record) that district courts in Kansas have been relying on the result in *Chronister* for 20 years.

To the extent the majority is fearful of opening the floodgates of litigation, I would respond with the words of retired United States Supreme Court Justice John Paul Stevens: "The fair administration of justice is never cost-free." Linda Greenhouse, *Speaking Truth to the Supreme Court*, N.Y. Times, April, 16, 2015, http://www.nytimes.com/2015/04/16/opinion/speaking-truth-to-the-supreme-court.html.

To the extent the majority is suggesting that we must make an exception to our construction canon that forbids adding vital omissions to the sentencing statutes (here, under the guise of applying common law) in order to promote the system-wide stability and continuity ordinarily achieved through the doctrine of stare decisis, I draw the majority's attention to numerous recent decisions in which this court has eschewed longtime precedent that was in derogation of plain-language statutory interpretation. See, *e.g.*, *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 522-25, 154 P.3d 494 (2007) (interpreting workers compensation statutes to abrogate parallel injury rule relied upon by trial courts for 76 years). Those breaks with precedent were justified because they rectified past judicial legislating in contravention of plain statutory language and our rules of construction. I decline to crawfish from this court's recent efforts to avoid just making up things as we go.

More importantly, I believe that system-wide stability and continuity is best maintained when this court consistently follows its logical, tried-and-true analytical framework, applying it to all issues in all cases, regardless of the individual result that might obtain in a particular case. The result desired by a majority of this court in an individual case should not change how the law works in Kansas. *Cf. Leaming v. U.S.D. No. 214*, 242 Kan. 743, 761, 750 P.2d 1041 (1988) (Herd, J., dissenting) ("Result-oriented justice is government of men and not of law, directly contrary to the concept of the rule of law.").

Particularly troubling to me is the majority's mischaracterization of our past cases and its use of distorted dicta, taken out of context. For instance, contrary to the majority's declaration, *State v. Finch*, 75 Kan. 582, 89 P. 922 (1907), did not consider the effect of legislative silence, but rather the case struggled to give effect to legislative intent when faced with restrictive statutory language. In that case, the defendant was convicted of manslaughter and sentenced to a prison term. While free on appeal bond, Finch committed other felonies, for which he was convicted and sentenced to another prison term. The imprisonment in the second case was "to commence at the expiration of his term in the former case." 75 Kan. at 583. The appeal in the second case was "whether this cumulative [consecutive] sentence can be sustained." 75 Kan. at 583. The court noted the contention "that under the common law the rule is that successive sentences are concurrent and not cumulative," and "that a cumulative sentence in this state must be justified, if at all, under section 5695 of the General Statutes of 1901." 75 Kan. at 583-84.

The State's problem with the consecutive sentence statute in *Finch* was that it provided for consecutive sentences for two or more offenses *at the same term of court*, but Finch's second sentence was at a subsequent term of court. But the *Finch* court noted that the legislative policy was to increase punishment for multiple offenses "without regard to strict technicality," so that the courts must "conform the procedure as to make

43

the purpose of the [statutory] law effective." 75 Kan. at 584. In other words, the *Finch* court broadly construed the statute authorizing consecutive sentencing to apply to Finch's multiple sentences by considering the "same term of court" language to be a technicality that it must overlook in order to give effect to the intent of the legislative enactment. 75 Kan. at 584. To me, giving effect to the legislative intent of a statute is different than applying the common law.

Likewise, in *Beck v. Fetters*, 137 Kan. 750, 22 P.2d 479 (1933), Beck was sentenced to the county jail for violating the liquor laws and, while an appeal was pending in that first case, he committed another offense. The sentencing court in the second case did not refer to the first case or state whether the second sentence was to be served concurrently or consecutively to the first sentence. The issue on appeal was stated as follows: "'Where two sentences are imposed by the same judge in the same court one after the other, at different terms, and there is nothing in the sentences as to whether they are to run consecutively or concurrently to each other, will the sentences run consecutively or concurrently?'" *Beck*, 137 Kan. at 751. The *Beck* court noted that "[t]he common-law rule and many of the earlier decisions following the rule are to the effect that if several sentences of imprisonment are imposed upon a person, covering the same period of time, they will run concurrently unless the court expressly directs that they be served consecutively." 137 Kan. at 751-52. The opinion then quoted the statute providing for consecutive sentencing where a person is convicted of two or more offenses before sentence is pronounced on any of them, R.S. 62-1512, and noted that the provisions "indicate the legislative purpose to depart from the rule of the common law." 137 Kan. at 752. In other words, *Beck* had no need to ruminate on whether the sentencing judge had a common-law authority to impose a consecutive sentence, because there was statutory authority. The only question was whether the statutorily authorized consecutive sentence for the second crime was applicable in the absence of a judicial pronouncement to that effect.

*Beck* concluded that the statutorily authorized consecutive sentence was mandatory, declaring that "the court must render judgment in conformity with the statutory policy and is without authority to adjudge that it shall run concurrently." 137 Kan. at 752-53. That declaration not only refutes the majority's suggestion that the court was acknowledging a common-law authority, it also torpedoes the notion that judges possess the discretion to impose either concurrent or consecutive sentences *in all criminal cases*, as will be discussed below in conjunction with *State v. Reed*, 237 Kan. 685, 687, 703 P.2d 756 (1985).

The majority's creative distortion of gratuitous dicta from prior cases to support its hybrid theory of statutory interpretation is particularly obvious and troubling with respect to its representation of the holding in *Burns v. State*, 215 Kan. 497, 524 P.2d 737 (1974). Burns pled guilty to several counts—apparently from a single charging document—in return for the county attorney's withdrawal of a motion for enhanced sentencing under a habitual criminal act. At sentencing on all counts *at the same time*, the county attorney advised the court of Burns' prior criminal history, prompting the court to run the sentence on one of the counts consecutive to the other counts. Burns subsequently filed a motion to vacate sentence under K.S.A. 60-1507, and in connection therewith testified that his trial counsel had told him that the plea bargain included the prosecutor's promise not to present Burns' prior criminal history to the sentencing court, *i.e.*, the State had breached the plea agreement. His trial counsel testified that he did not recall the prosecutor promising not to reveal the criminal history. After the district court found in favor of the State, Burns appealed, contending that "he was misled by his court-appointed attorney as well as betrayed by the county attorney." 215 Kan. at 499.

This court first characterized that "Burns' complaint on appeal is simply that the court did not believe his testimony that there was a promise not to reveal his past criminal

45

record to the court," and opined that assessing witness credibility was certainly within the trial court's discretion. 215 Kan. at 499. The court then dealt with Burns' ineffective assistance of counsel claim, before addressing the contention that the State had breached the plea agreement. That discussion contains the sentence upon which the majority hangs its hat. The entire discussion was as follows:

"Plea bargaining plays an important role in the effective administration of criminal justice. We approved the application of the ABA Standards for Criminal Administration as they relate to plea bargaining in *State v. Byrd*, 203 Kan. 45, 453 P.2d 22 [1969]. The standards provide such agreements are not binding upon the sentencing court. No agreement to withhold Burns' past criminal record, even if made, could have bound the county attorney or the sentencing court to those terms. The sentencing judge may and should ask for a pre-sentence report which would include past convictions, regardless of whether the habitual criminal act was to be imposed. [Citation omitted.] The authority of the court in ordering consecutive or concurrent sentences for convictions of two or more offenses at the same or separate times is discretionary with the court. (K.S.A. 1973 Supp. 21-4608, formerly K.S.A. 62-1512.) We find no abuse of discretion in the sentences imposed." 215 Kan. at 500.

Returning to the majority's characterization of the *Burns* opinion, the majority first notes that the 1969 version of K.S.A. 21-4608 "did not address the power to impose consecutive sentences in cases where sentencing occurred *on different days.*" Slip op. at 17. Then, the majority states as follows:

"Despite this silence, in *Burns v. State*, 215 Kan. 497, 500, 524 P.2d 737 (1974), this court recognized '[t]he authority of the court in ordering consecutive or concurrent sentences for convictions of two or more offenses at the same time *or separate times* is discretionary with the court.' (Emphasis added.) 215 Kan. at 500 (citing K.S.A. 1973 Supp. 21-4608). This statement seems to continue the longstanding recognition that a judge retains discretion to impose a consecutive sentence in situations where a statute is

46

silent, as long as that authority is consistent with the legislative policy reflected in the sentencing statutes." Slip op. at 17.

First, Burns' sentences for more than two offenses were ordered at the same time. Accordingly, the phrase the majority points to—"or separate times""—has no bearing on the actual holding in *Burns*, making it *gratis dictum*. See Black's Law Dictionary 549 (10th ed. 2014) (defining *gratis dictum* as a court's stating a legal principle more broadly than necessary to decide case).

More importantly, however, *Burns'* declaration about judicial discretion is directly attributable to K.S.A. 1973 Supp. 21-4608, which stated: "(1) When separate sentences of imprisonment for different crimes are imposed on a defendant *on the same date*, . . . such sentences shall run concurrently or consecutively *as the court directs*." (Emphasis added.) In other words, the sentencing circumstance presented in *Burns* was completely covered by expressed statutory authority—no silence, no ambiguity, no gap to fill, no room for applying the common law. Accordingly, *Burns* was actually recognizing fairly recent explicit statutory authority, rather than acknowledging any kind of "longstanding" common-law discretion. The majority's cherry-picked superfluous phrase from *Burns* simply cannot carry the load which the majority heaps upon it.

Finally, *In re W.H.*, 274 Kan. 813, 817, 57 P.3d 1 (2002), noted that "[f]rom its early beginnings, Kansas relied upon *statutory authority* to impose consecutive sentencing." (Emphasis added.) Curiously, the opinion added the dictum that "Kansas may recognize that a court had the common-law authority to impose consecutive sentences," citing to *Beck* and *Finch*. 274 Kan. at 817. But, as noted above, those cases held that consecutive sentencing was a product of statutory policy, in derogation of the common law. Then, just as curiously, the opinion declares that "[t]he common law rule was abrogated by statute in 1855," and quotes a statute virtually identical to those in *Beck*

47

and *Finch*. 274 Kan. at 817. What is crystal clear is that *In re W.H.* decided that the district court had no authority to impose consecutive sentencing in that context because there was *no statutory authority* to do so, either expressed or implied. Notwithstanding its finding that the Kansas Juvenile Justice Code (KJJC) "is silent on the question of consecutive sentences," 274 Kan. at 823, *In re W.H.* did not even discuss the possibility of filling an ambiguity-by-silence statutory gap with common-law authority.

In short, I have been unable to locate a prior Kansas case in which the sentencing court explicitly relied upon common-law authority to impose consecutive sentences in any case, much less in the different case/different day/different county circumstance. Rather, the courts have broadly construed statutory provisions to give effect to what they referred to as "statutory policy." *E.g.*, *Beck*, 137 Kan. at 753. And, again, a court broadly construing and applying a statute to give effect to perceived legislative intent is the antithesis of applying the common law, which is derived by judicial decisions, not legislative intent.

I will forego any lengthy discussion about the majority's reliance on the United States Supreme Court's interpretation of federal criminal law, or other states' handling of their own criminal law, because that discussion has no more bearing on *Kansas common law* than it does on the price of wheat in Kansas. Moreover, as noted in *In re W.H.* and acknowledged by the majority, the law of consecutive sentencing in Kansas was the product of statutory law even before statehood in 1861. See 1855 Laws of the Kansas Territory, ch. 54, § 9 (providing for consecutive sentencing when defendant convicted of two or more offenses before being sentenced on either offense). Surely, then, we need not ruminate on English common law in an area of the state law that has been controlled by statute throughout the state's entire period of existence.

Next, I have multiple disagreements with the majority's stare decisis rationale based on *Chronister.* My initial concern is that the majority appears to have manufactured a new definition of the stare decisis doctrine. In the case it cites, *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004), this court quoted from *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 (1990), *overruled on other grounds Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 (1991), as follows, with emphasis added: "'It is recognized under the doctrine of stare decisis that, once a point of law has been established by a court, that point of law will generally be followed *by the same court and all courts of lower rank* in subsequent cases where the same legal issue is raised.'" The majority acknowledges that this court has not decided the issue presented here, and, given that we are the court of last resort with respect to Kansas law, we are not bound by any higher court's decision.

Granted, the majority attempts to sidestep its aberrant use of the stare decisis doctrine by saying that it understands that we are not bound by a Court of Appeals decision. But re-labeling its argument as "following precedent" should not fool anyone.

Moreover, at least since 2008, district courts should have been on notice that the holding in *Chronister* was suspect, at best. In *State v. Crawford*, 39 Kan. App. 2d 897, 897-98, 185 P.3d 315 (2008), a panel of the Court of Appeals, relying on our precedent, *In re W.H.*, clearly declared that "[a] court's power to impose consecutive sentences flows from statutory authority," and that because none of the consecutive-sentence statutes in *the adult criminal code* expressly included the circumstance in that case, "the district court had no authority to impose *a consecutive adult sentence*." (Emphasis added.)

The Court of Appeals panel in this case distinguished *Crawford* by the factual distinction that the prior sentence, to which the adult sentence was imposed consecutively, was a juvenile adjudication. *State v. Quested*, No. 106,805, 2012 WL

49

3000385, at *1 (Kan. App. 2012) (unpublished opinion), *rev. granted* October 17, 2013. But that was a distinction without a difference. *Crawford* was construing the *adult* sentencing statutes to see if the *adult* sentence could be imposed consecutively. Determining that an adult sentence cannot be imposed consecutive to a prior juvenile adjudication because no statute says it can be is no different than saying an adult sentence cannot be imposed consecutive to another adult sentence imposed in a different county, in a different case, on a different day because no statute says it can be. The point is that *Crawford* refused to acknowledge or apply any common-law authority for adult consecutive sentencing in derogation of the statutory sentencing scheme.

Perhaps more importantly, the majority appears to read into *Chronister* a holding that will further its objective of finding a heretofore undiscovered hybrid common-law, statutory silence-triggering, gap-filling sentencing authority. I do not see any mention of statutory silence or common law in the *Chronister* opinion. I do see citation to and discussion of K.S.A. 1994 Supp. 21-4608(h), K.S.A. 1994 Supp. 21-4608(a), and the 1982 amendment to K.S.A. 21-4608, together with the presumption that the legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. 21 Kan. App. 2d at 593-94. That is followed by opining that "[i]t would be illogical to provide the sentencing benefit Chronister asserts merely because he committed the third crime against E.C. in Harvey County rather than in Sedgwick County or in another state or federal jurisdiction." 21 Kan. App. 2d at 593. The opinion certainly reads as if the panel is giving effect to legislative intent, rather than court-made common law.

I do acknowledge, however, that *Chronister* recites the broad statement that "[p]rior to 1982, the imposition of concurrent or consecutive sentences *in all criminal cases* was placed within the sound discretion of the trial court." 21 Kan. App. 2d at 593

(citing *Reed*, 237 Kan. at 687). But *Chronister*'s use of the *Reed* language is untenable for several reasons.

First, and foremost, the language *Chronister* pulled from *Reed* was pure dictum; the common-law sentencing discretion of the district court—whether before or after 1982—was simply not an issue in *Reed*. The opinion stated that the "sole issue presented" in *Reed* was "whether mandatory consecutive sentences were required under K.S.A. 1984 Supp. 21-4608(4), because the defendant committed two felonies after having been released on bond pending trial in the first case." 237 Kan. at 686. In other words, *Reed* ultimately found that the consecutive sentences in that case were statutorily *mandated*, rather than finding that the sentencing judge had a common-law power to impose them at the court's discretion.

Recently, this court clarified that "[d]icta in a court opinion is not binding, even on the court itself." *Law v. Law Company Building Assocs.*, 295 Kan. 551, Syl. ¶ 1, 289 P.3d 1066 (2012). Surely, then, if this court's dictum in *Reed* would not be binding on this court, as a matter of law, then the mere fact that a Court of Appeals decision has cited to the dictum cannot elevate it to the status of being mandatory authority for us. That would be contrary to the rationale recited in *Law*, *i.e.*, "because the court should consider the issue in light of the briefs and arguments of counsel when the question is squarely presented for decision." 295 Kan. 551, Syl. ¶ 1.

Further, the out-of-context cite to only part of a sentence from *Reed* distorts the point being made in that prior case. The entire sentence reads as follows: "It should be noted that *under the pre-1982 statute*, the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court, *and mandatory consecutive sentences were not required in any case*." (Emphasis added.) *Reed*, 237 Kan. at 687. And that sentence followed a recitation of the pre-1982 version of

K.S.A. 21-4608(2), which provided that any person committing a crime while on parole or conditional release "shall serve such sentence concurrently or consecutively with the term or terms under which the person was released, *as the court directs.*" (Emphasis added.) 237 Kan. at 687. In other words, the pre-1982 discretion to *not* impose a consecutive sentence came from the prior statute, not the common law.

Then, following the cited sentence, *Reed* explained how the legislature had responded to public concern about felonies being committed by persons who were released on bond from a prior felony case by making consecutive sentencing *mandatory* in such a circumstance. The point the *Reed* court was making was that, prior to the 1982 statutory amendments making consecutive sentences mandatory, the district court had the discretion under the express language of K.S.A. 21-4608(2) to impose the *statutorily authorized* concurrent sentence. The point was not that prior to 1982 the sentencing judges were imposing consecutive sentences for crimes committed on bond pursuant to any type of common-law authority.

Moreover, *Reed*'s overbroad statement that, prior to 1982, the trial court had discretion to impose either a concurrent or consecutive sentence "in *all* criminal cases," 237 Kan. at 687, is simply incorrect. (Emphasis added.) We see that notion refuted by the 1933 holding in *Beck,* where the court found consecutive sentencing to be mandatory, pursuant to statutory policy, and specifically declared that the district court in that case had no discretion or authority to impose a concurrent sentence. 137 Kan. at 752-53.

Lastly, *Reed* was filed on July 26, 1985, and later that same year, on December 6, 1985, the Kansas Supreme Court filed its opinion in *State v. Osbey*, 238 Kan. 280, 710 P.2d 676 (1985). *Osbey* declared that "[i]n Kansas, sentencing of an individual is strictly controlled by statute." 238 Kan. at 288. As in *Reed*, *Osbey* did not cite to any authority for its sweeping declaration. But subsequent Kansas Supreme Court opinions over the

52

succeeding decades would repeat that rule. See *State v. McCarley*, 287 Kan. 167, 174, 195 P.3d 230 (2008) ("[T]he sentencing of a criminal defendant is strictly controlled by statute in Kansas."); *State v. Martin*, 285 Kan. 735, 738, 175 P.3d 832 (2008) ("The sentencing of a criminal defendant is strictly controlled by statute in Kansas."); *State v. Anthony*, 274 Kan. 998, 999, 58 P.3d 742 (2002) ("The sentencing of a criminal defendant is strictly controlled by statute in Kansas."); *State v. Vanwey*, 262 Kan. 524, Syl. ¶ 4, 941 P.2d 365 (1997) ("The sentencing of a criminal defendant is strictly controlled by statute in Kansas."); and *State v. Saft*, 244 Kan. 517, Syl. ¶ 1, 769 P.2d 675 (1989) ("The sentencing of a criminal defendant is strictly controlled by statute in Kansas.").

If a judge is employing a common-law power to impose a portion of a sentence that is not specifically or even impliedly authorized by any sentencing statute, then that criminal defendant's sentencing has not been *strictly controlled* by Kansas statutes. The sentence has been partly controlled by statute and partly controlled by common law.

The majority's apparent interpretation of "strictly controlled" is that the statute only controls the portion of the sentence which it specifically authorizes or specifically prohibits. But, of course, that renders superfluous the modifier, "strictly." In all areas of the law, a specific statutory provision that authorizes or prohibits an action will necessarily control the matter in court, even if we have not declared that area of the law as being "strictly controlled" by statute. I find such creative redefining of plainly understood words and phrases to be contrary to the transparency for which this court has strived in recent years. Moreover, one can only imagine the discomfort of those legislators who might realize that Kansas common law is what the Kansas Supreme Court says it is, so that the majority's new paradigm means that whenever the legislature fails to prohibit something, the Kansas Supreme Court will be able to "fill the gap" with its own view of the "common law."

I submit that the rule that our statutes strictly control criminal sentencing relieves the legislature of the burden of specifically listing all *unauthorized* sentences, especially those that might have emanated from the common law. The sentencing statutes should not have to tell a sentencing judge everything that he or she cannot do.

But perhaps more to the point, one cannot view the comprehensive nature of the new Kansas Criminal Code and Kansas Code of Criminal Procedure, adopted in 1969, without believing that the legislature intended to occupy that entire field. See Clark, *State Control of Local Government in Kansas:  Special Legislation and Home Rule*, 20 Kan. L. Rev. 631, 672 (1972) ("The comprehensiveness of the state Criminal Code, coupled with the elaborate procedural safeguards given to defendants by the equally comprehensive Code of Criminal Procedure, suggests that the legislature has preempted the criminal law field, except for matters such as minor traffic violations."). Additionally, in K.S.A. 21-3102(3), the legislature specifically provided that the new criminal code "does not affect the power of a court to punish for contempt or to employ any sanction authorized by law for the enforcement of an order or a civil judgment or decree." The converse of that statement is that the new code *did* affect the power of the court to punish for crimes under the code.

I do not quibble with the majority's quote from Professor Wilson which declares that one must make reference to the common law in order to understand legislative intent. In fact, the legislature has specifically said that the common law has a place in the comprehensive criminal code. See K.S.A. 21-3102(1) (where statutory crime is not defined by that statute, common law definition shall be applied); K.S.A. 77-109 (common law as modified by constitution, statute, and judicial decisions shall remain in force *in aid of* the general statutes of the state). But the discretion retained by the sentencing courts must be authorized by the statutes.

Then, some 23 years after adopting the comprehensive criminal code, the legislature passed the comprehensive Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, which made sweeping changes in the law of sentencing, principally eliminating the exercise of most judicial discretion. One would have to view that action as the legislature not only acquiescing to, but embracing, our caselaw declaring that the sentencing of a criminal defendant is strictly controlled by statute, not by common law.

Finally, I offer the suggestion that the majority's citation to K.S.A. 21-4601 for the legislative directive that the statutory article on sentencing "shall be liberally construed" to effect its purposes actually undermines the majority's argument. That statute tells me that the legislature wants the courts to liberally construe its statutory language to make the legislative enactments applicable, rather than strictly construing the statutes to make them inapplicable and then fill in the gaps with court-made common law. Moreover, while a certain amount of synergy between statutory law and common law may be desirable, I would not destroy the distinction between the two.

In short, I would not obfuscate the law in this state simply to correct a perceived legislative oversight, when the legislature can make its own corrections, if that is indeed what it intended. I would reverse Quested's consecutive sentencing.